Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>IVAN ANGELES,<br><br>Defendant. | Civil Action No. 19-16117 (ES) (CLW)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is plaintiff United States of America's ("Plaintiff") motion for default judgment against defendant Ivan Angeles ("Defendant"). (D.E. No. 6). The Court has considered Plaintiff's submissions and decides the matter without oral argument. *See* Fed. R. Civ. P. 78(b). For the reasons explained below, the Court GRANTS the motion.

**I.      BACKGROUND**

On July 31, 2019, Plaintiff commenced the instant action to enforce a Forfeiture Order issued against Defendant for an alleged violation of the Communications Act of 1934, 47 U.S.C. § 151 *et seq.* (the "Act"). (D.E. No. 1, Complaint ("Compl.") ¶ 1).

Plaintiff alleges that in 2012 and 2013, the Federal Communications Commission ("FCC") Enforcement Bureau's New York Office issued four "Notices of Unlicensed Operations" to Defendant for operating an unlicensed radio station on the frequency 91.9 MHz from various

1

locations within Passaic, New Jersey. (*Id.* ¶ 13).[1]  Thereafter, on February 11, 2015, and in response to complaints, FCC agents reportedly located the source of the radio frequency transmissions on the 91.9 MHz frequency and traced it to an antenna located on the roof of a single-family home located at 434 Gregory Avenue in Passaic, New Jersey. (*Id.* ¶ 14).  The FCC later determined that the station required a license because the signals on the 91.9 MHz frequency exceeded the limits of FCC rules, found at 47 C.F.R. § 15.239 (*id.* ¶ 15); however, the FCC had no record of authorization for an FM radio broadcast station at or near the subject residence. (*Id.* ¶ 16).

According to the Complaint, property records confirmed that Defendant and another individual owned the Gregory Avenue property. (*Id.* ¶ 18).  Plaintiff further alleges that, following an internet search, FCC agents discovered a website for an unlicensed radio station called "La Ruza," which purported to operate on the frequency 91.9 MHz in New Jersey. (*Id.* ¶ 19).  The website included a copyright mark and an accompanying statement that "La Raza 91.9 FM is a register[ed] mark of Mr. Ivan Angeles," further linking the radio station to Defendant. (*Id.* ¶ 20). Following these events, on August 31, 2015, FCC agents issued another written Notice of Unlicensed Operation addressed to Defendant, but Defendant did not respond. (*Id.* ¶¶ 21 & 22).

On September 25, 2015, the FCC's Enforcement Bureau issued a "Notice of Apparent Liability" ("NAL") to Defendant proposing a monetary forfeiture in the amount of $15,000 for operating an unlicensed and unauthorized radio transmitter, and for doing so willfully and repeatedly, in violation of 47 U.S.C. § 301. (*Id.* ¶ 23). Plaintiff alleges that Defendant was sent a

---

[1] Plaintiff alleges that the FCC issued these first four notices "to Defendant." (Compl. ¶ 13). However, seemingly, based on the allegations in the Complaint, the FCC did not learn Defendant's name or address until 2015. (*Id.* ¶¶ 14–20). Thus, it is unclear how the FCC was able to issue these notices "to Defendant" in 2012 and 2013. Regardless, there is evidence to suggest that at some point before the initiation of this lawsuit, Defendant was aware of the administrative proceedings.  And the Court's ultimate conclusion on this motion is the same whether or not the FCC issued the first four notices "to Defendant."

copy of the NAL by certified mail, return receipt requested and by first class mail.  (*Id.*). Nevertheless, Defendant did not respond to the NAL.  (*Id.* ¶ 24).

According to the Complaint, on May 26, 2016, the FCC issued a Forfeiture Order against Defendant directing him to pay the forfeiture penalty.  (*Id.* ¶ 25).  In response to the Forfeiture Order, Defendant, through counsel, filed a request for reconsideration, in which counsel indicated that Defendant did not respond to the NAL because he never received it.  (*Id.* ¶ 26 & Ex. C, Request for Reconsideration).  Thus, counsel posited, "it would be fundamentally unfair to impose such a severe monetary penalty against [Defendant] at [that] time without him being given the opportunity to address the same."  (*Id.* Ex. C).  On June 8, 2018, the FCC dismissed Defendant's request for reconsideration as untimely.  (*Id.* ¶ 27).  In addition, the FCC stated that even if the request had been timely, they would have denied it because the Bureau satisfied its notice obligations.  (*Id.* Ex. D, Memorandum Opinion and Order ¶ 6).  The FCC's Order mandated payment of the forfeiture penalty by July 8, 2018 (30 days after the release of the order) and warned that failure to pay may result in referral of the case to the Department of Justice ("DOJ") for enforcement.  (*Id.* ¶ 28 & Ex. D ¶ 4).  Still, Defendant did not pay the forfeiture, and on August 29, 2018, the FCC sent Defendant another letter demanding full payment of the forfeiture within 30 days.  (*Id.* ¶ 29).  To date, Defendant has not paid the forfeiture penalty.  (*Id.* ¶ 30).

Based on the foregoing, Plaintiff filed the Complaint on July 31, 2019, alleging one claim for enforcement of the forfeiture penalty.  (*See generally id.*).  Despite being served with the Complaint, Defendant failed to appear in this action, resulting in Plaintiff's request for a Clerk's entry of default judgment.  (D.E. No. 3., Request for Entry of Default).  On March 4, 2020, the Clerk of Court made an entry of default.  The instant motion followed.  (D.E. No. 6).

## II. LEGAL STANDARD

A district court may enter default judgment against a party who has failed to plead or otherwise respond to the action filed against him. Fed. R. Civ. P. 55(b)(2). To obtain a default judgment, a plaintiff must first request entry of default by the Clerk of Court. *See Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 521 n.1 (3d Cir. 2006). Once default is entered, a plaintiff seeking default judgment must then file a motion with the district court requesting the relief.

"[E]ntry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). "Before entering default judgment, the Court must address the threshold issue of whether it has personal jurisdiction and subject matter jurisdiction over the parties." *Prudential Ins. Co. of Am. v. Bramlett*, No. 08-0119, 2010 WL 2696459, at *1 (D.N.J. July 6, 2010). Then, "the Court must determine (1) whether there is sufficient proof of service; (2) whether a sufficient cause of action was stated; and (3) whether default judgment is proper." *Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012) (internal citations omitted).

To determine whether granting default judgment is proper, the Court must make factual findings as to "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008). In making these determinations "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). "While the court may

conduct a hearing to determine the damages amount, Fed. R. Civ. P. 55(b)(2), a damages determination may be made without a hearing as long as the court ensures that there is a basis for the damages specified in the default judgment." *Days Inns Worldwide, Inc. v. Panchal*, No. 15-1459, 2015 WL 5055318, at *2 (D.N.J. Aug. 25, 2015) (internal quotation marks and alterations omitted).

### III. DISCUSSION

#### A. Jurisdiction

To start, the Court is satisfied that it has subject matter jurisdiction over this matter because the United States is a party in the action and the matter arises under the laws of the United States. 28 U.S.C. §§ 1331 & 1345; 47 U.S.C. § 504(a).

The Court is also satisfied that it has personal jurisdiction over Defendant. A court can exercise personal jurisdiction over a defendant who is served with process within the state in which the court sits. *See Burnham v. Superior Ct. of California, Cty. of Marin*, 495 U.S. 604, 628 (1990); *Back2Health Chiropractic Ctr., LLC v. Sentinel Ins. Co., Ltd.*, No. 20-6717, 2021 WL 960875, at *4 (D.N.J. Mar. 15, 2021) ("Personal jurisdiction can also be obtained through . . . in-state service on a defendant."). Here, Defendant was served with process in the State of New Jersey. (D.E. No. 3-2, Certificate of Service). Alternatively, the Court has specific personal jurisdiction over Defendant because the facts alleged in the Complaint demonstrate that he purposefully directed his activities at the State of New Jersey by operating an unlicensed radio station out of his residence in New Jersey, and Plaintiff's claim arises out of these activities. *See O'Connor v. Sandy Lane Hotel*, 496 F.3d 312, 317 (3d Cir. 2007). Moreover, the exercise of personal jurisdiction comports with fair play and substantial justice. *See id.*

  **B.**  **Service of Process**

  Service of process is governed by Federal Rule of Civil Procedure 4, which explains that the plaintiff is responsible for serving the summons with a copy of the complaint within the time allowed by Rule 4(m). *See* Fed. R. Civ. P. 4(c). Rule 4 also dictates the manner in which individuals can be served with process. Fed. R. Civ. P. 4(e).

  Plaintiff satisfied the service requirements here: Defendant was timely and personally served with process on August 27, 2019. (*See* Certificate of Service); *see* Fed. R. Civ. P. 4(e)(2)(A) (permitting service by, *inter alia*, "delivering a copy of the summons and of the complaint to the individual personally.").

  **C.**  **Sufficient Cause of Action**

  Having addressed the threshold issues of jurisdiction and service of process, the Court turns to the sufficiency of Plaintiff's claim for the enforcement of a forfeiture penalty. The familiar Rule 12(b)(6) standard governs this determination. *See Mineo v. McEachern*, No. 12-01950, 2014 WL 2197032, at *2 (D.N.J. May 27, 2014) ("A court will deny a default judgment if the complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6).").

  The Court is satisfied that Plaintiff has sufficiently stated a cause of action for enforcement of a forfeiture penalty based on Defendant's willful and repeated violation of 47 U.S.C. § 301. Pursuant to § 301, for the purpose of "maintain[ing] the control of the United States over all the channels of radio transmission[,] and to provide for the use of such channels," an individual is prohibited from operating "any apparatus for the transmission of energy or communications or signals by radio" from one place in the United States to another place in the United States "except under and in accordance with [the Act] and with a license in that behalf granted under the provisions of [the Act]." The FCC's rules contain an exception to the licensing requirement of

§ 301, allowing the intentional transmission of radiofrequency signals in the 88-108 MHz band if the field strength of the signals does not exceed certain limits. 47 C.F.R. § 15.239. If the signals exceed the stated limits, however, an individual license is required. *Id.*; 47 U.S.C. § 301. If the FCC finds a violation of § 301 to be "willful" or "repeated," it may issue a forfeiture penalty. 47 U.S.C. § 503(b). The term "willful" is defined as the "conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision" of the Act or FCC rule or regulation. 47 U.S.C. § 312(f)(1). And a "repeated" violation is one that occurs "more than once" or is "continuous, for more than one day." *Id.* § 312(f)(2).

The Plaintiff's allegations, taken as true, sufficiently state that Defendant was operating an unlicensed radio station on the 91.9 MHz frequency with signals that violated the limits defined in 47 C.F.R. § 15.239. (Compl. ¶¶ 13–15 & 33). The source of the radio frequency transmissions was traced to a location with property owned by Defendant. (*Id.* ¶¶ 14 & 18). And following an internet search, the FCC also discovered a website for the radio station called "La Ruza," which contained a registered copyright mark belonging to Defendant. (*Id.* ¶ 20). These allegations are sufficient to state a claim for a violation § 301. *See United States v. Downer*, No. 13-62428, 2014 WL 584209, at *3 (S.D. Fla. Feb. 14, 2014) ("Under the facts set forth in the Complaint and its attached FCC documents—and deemed admitted by virtue of Defendant's default—Plaintiff has established that Defendant violated FCC regulations concerning unlicensed broadcast operations.").

Moreover, the allegations are sufficient for the Court to make the plausible inference that Defendant's conduct was willful and repeated as those terms are defined in § 312. Defendant operated the unlicensed radio station over the course of three years, despite the FCC issuing various notices to Defendant about his unlawful conduct. (Compl. ¶¶ 13–27); *see also United States v.*

7

*Dudley*, No. 18-1756, 2020 WL 4284052, at *3 (N.D. Ala. July 27, 2020) (concluding that the plaintiff was entitled to judgment on the pleadings as to liability for a willful violation of § 301 based on the defendant's admission that he operated an unlicensed radio station on the 103.9 frequency). The Court thus concludes that Plaintiff has sufficiently stated a cause of action to recover a forfeiture penalty for Defendant's willful and repeated violation of § 301.

### D.  Propriety of Default Judgment

The Court also finds that default judgment is proper. To start, although the Court's assessment of potential defenses is hampered by the lack of adversarial presentation of issues, the current record does not indicate any meritorious defense. *See Malibu Media, LLC v. Deleon*, No. 15-3855, 2016 WL 3452481, at *3 (D.N.J. June 20, 2016) ("The Court may presume that a defendant who has failed to plead, defend, or appear has no meritorious defense.").

Second, Plaintiff has been prejudiced by Defendant's failure to answer because it has been prevented from pursuing its meritorious claim and enforcing the laws of the United States. (D.E. No. 6-1 ("Mov. Br.") at 5–6); *see Gowan v. Cont'l Airlines, Inc.*, No. 10-1858, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012) (finding that the plaintiff would suffer prejudice if the court did not enter default judgment because the plaintiff "has no other means of seeking damages for the harm caused by Defendant").

Third, Defendant is culpable for defaulting in this case. The record indicates that Defendant received notice of his illegal conduct prior to the initiation of this lawsuit. (Compl. ¶¶ 23–26; Mov. Br. at 6). Although Defendant claimed, in the course of the administrative proceeding, that he did not receive the NAL, his request for reconsideration is evidence that, at some point prior to this litigation, he became aware of the allegations against him and that his failure to pay the forfeiture penalty could result in enforcement by the DOJ. Since the initiation

of this lawsuit, Defendant has been served with the summons and Complaint. Despite the foregoing, Defendant has not appeared in this action.

### E.     Damages/Forfeiture Amount

Lastly, the Court finds that Plaintiff is entitled to recover the requested forfeiture amount of $15,000. Section 503(b) permits a forfeiture penalty of $10,000 for each violation, or for each day of a continuing violation, of 47 U.S.C. § 301. (Mov. Br. at 6). According to Plaintiff, then, because Defendant's violation was repeated, he was subject to a fine of $10,000 per day, up to the statutory maximum of $75,000 for a single act. (Mov. Br. at 6); 47 U.S.C. § 503(b)(2)(D). In determining the amount of such a forfeiture, "the Commission or its designee shall take into account the nature, circumstances, extent, and gravity of the violation and, with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and such other matters as justice may require." 47 U.S.C. § 503(b)(2)(E).[2]

Based on the foregoing and on the current record, Plaintiff has adequately established that Defendant violated FCC regulations by operating an unlicensed radio station and that, as a result of this violation, Plaintiff is subject to a $10,000 fine per diem for his repeated violation. Furthermore, the Court is satisfied that there is an adequate basis for the $5,000 upward adjustment from the base amount, based on a consideration of the § 503(b)(2)(E) factors. *See Downer*, 2014 WL 584209 at *2 (holding that the plaintiff was entitled to recover a $20,000 forfeiture penalty because the plaintiff had established that the defendant violated FCC regulations and because "the FCC appropriately considered the statutory factors in adjusting the forfeiture penalty upward from

---

[2]     Similarly, the FCC's forfeiture guidelines establish base penalties for certain violations and identify relevant criteria to consider when determining the appropriate penalty in any given case. 47 C.F.R. § 1.80(b); (Compl. ¶ 34). Those guidelines set a base penalty of $10,000 for operation without an instrument of authorization, and an upward adjustment is permitted for violations that are, *inter alia*, egregious, intentional, or repeated, or that cause substantial harm or generate substantial economic gain for the violator. *Id.* § 1.80(b)(10), Tables 1 & 3.

the base amount"); *United States v. Sling Broadband, LLC*, No. 12-61979, 2012 WL 5989653, at *3 (S.D. Fla. Nov. 30, 2012) (similar). Accordingly, the Court finds that there is ample basis for the $15,000 forfeiture Plaintiff seeks. *See Days Inns Worldwide*, 2015 WL 5055318, at *2 (explaining that the court can make a damages determination without a hearing so long as there is a "basis for the damages specified in the default judgment").

IV.    **CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiff's motion for default judgment against Defendant. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
